IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KHALIL KHALIL, individually and on behalf of
all others similarly-situated

                *Plaintiff*,

v.

McGRATH COLOSIMO, LTD. d/b/a McGRATH LEXUS,

                *Defendant*

Case No.: 1:17-cv-07474

## DEFENDANT McGRATH COLOSIMO, LTD. d/b/a McGRATH LEXUS'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES the Defendant, McGRATH COLOSIMO, LTD. d/b/a McGrath Lexus, ("Defendant"), by its attorneys, Eric L. Samore and John C. Ochoa of SmithAmundsen LLC, and states the following in support of its Motion for Judgment on the Pleadings:

## INTRODUCTION

On August 31, 2017, Plaintiff Khalil Khalil ("Plaintiff") filed a single-count, purported class action complaint ("Cmplt.") against McGrath Colosimo, Ltd. d/b/a McGrath Lexus ("McGrath") arising from his receipt on or about August 14, 2017 of a single text message at the number he provided to McGrath. The text informed Plaintiff—a McGrath customer who had brought his Lexus vehicle in for service at least six times since October 2014—that McGrath was unaffected by a local mechanic's strike that shut down service operations for seven weeks at nearly 140 other new-car dealerships in the Chicago area. The Complaint, however, omits the fact that Plaintiff provided his number to McGrath and asserts instead in conclusory fashion that

- 1 -

this single informational text was an "unsolicited" "telephone solicitation" sent "[a]s part of an advertising campaign" in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et. seq.* But Plaintiff's allegations fail as a matter of law based on the pleadings—the text was not unsolicited and was not a solicitation or part of an advertising campaign. The Complaint should therefore be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## SUMMARY OF THE PLEADINGS

Plaintiff's threadbare complaint alleges precious few facts: Plaintiff is an individual who resides in Cook County, Illinois (Cmplt. ¶ 1); McGrath is an Illinois corporation with locations in Westmont, Illinois and Chicago, Illinois (its principal place of business) that sells and services Lexus vehicles (*id.* ¶¶ 3 & 4); on or about August 14, 2017 at 6:09 pm, Plaintiff received on his cell phone a text from short code 37483 stating ", it's McGrath Lexus. We aren't affected by the local mechanics strike-If you need anything, we're open for business! Rply STOP to OptOut" (*id.* ¶¶ 8-11 & 13); "[o]n information and belief" so did others, whom Plaintiff seeks to represent (*id.* ¶¶ 2 & 17); and Plaintiff and other recipients were harmed by the texts because the texts invaded their rights of privacy and seclusion and wasted their time. *Id.* ¶¶ 15-17. A screenshot of the text Plaintiff received is embedded in the Complaint:



*Id.* ¶ 8.

The remainder of the Complaint is conclusions and boilerplate: Plaintiff asserts that the text was unsolicited (*id.* ¶ 7); that the text was a "telephone solicitation" that was "part of an advertising campaign" that required McGrath to obtain "prior express written consent" from the recipients (*id.* ¶¶ 7 & 14); that McGrath did not obtain such consent (*id.*); that "[o]n information and belief," the texts were sent using an automatic telephone dialing system ("ATDS") (*id.* ¶ 25); and that this lawsuit should proceed as a class action. *Id.* ¶¶ 23-24, 29-34. Plaintiff defines the class he purports to represent as follows: "All persons in the United States who, from August 31, 2014 to the present, received text messages on their cell phone from McGrath Lexus or some person or entity acting on behalf of McGrath Lexus and did not provide McGrath Lexus their prior express written consent to receive such text messages. *Id.* ¶ 24. On behalf of himself and this purported class, Plaintiff seeks costs and expenses and "all damages available under the

TCPA, including statutory damages in the amount of $500 to $1,500 for each alleged violation. *Id.* at p. 7.

Conspicuously absent from his Complaint, however, are several key facts set forth in the Answer. First, the Complaint simply omits the fact that Plaintiff is a frequent customer of McGrath's Chicago location and has brought his vehicle in for service at least six times since October 17, 2014. McGrath's Answer (the "Answer) at pp. 10-11, First Affirmative Defense ¶¶ 1-8. Second, the Complaint omits the fact that Plaintiff voluntarily provided to McGrath the phone number at which he received the text at issue: like all McGrath service customers, Plaintiff was asked before or during his first service visit for "the best number where [he] could be reached," and asked to confirm that number before or during each subsequent visit. *Id.* at 11-12, First Affirmative Defense ¶¶ 8-12.

Third, the Complaint omits the fact that the "local mechanics strike" referenced in the text was lengthy, widespread, disruptive, and garnered significant media attention: The Local Automobile Mechanic's Local 701 strike began on August 1, 2017; involved approximately 2,000 mechanics at nearly 140 new-car dealerships in the Chicago area; and lasted seven weeks. *Id.* at 12, First Affirmative Defense ¶¶ 13-16. As discussed in that reporting, dealerships "turned away customers and canceled scheduled maintenance appointments," "leaving customers to fend for themselves." Driving Sales, *Chicago Mechanics' Strike Continues After Two Weeks*, http://www.drivingsales.com/news/chicago-mechanics-strike-continues-after-two-weeks/ (Aug. 17, 2017) (cited in Answer at p. 13, First Affirmative Defense ¶ 16 n.2); Matt Posky, The Truth About Cars, *Hope You're Handy: Chicago Mechanics Are Still on Strike*, http://www.thetruthaboutcars.com/2017/08/hope-youre-handy-chicago-area-mechanics-still-

striking/ (Aug. 4, 2017) (cited in Answer at p. 13, First Affirmative Defense ¶ 16 n.2).[1] As a result, numerous print and television media outlets advised consumers that "[a]nyone who needs to get their car looked at is encouraged to call ahead to make sure the service garage is open and that mechanics are working." CBS Chicago, *Nearly 2,000 Chicago-Area Mechanics Set To Go On Strike*, http://chicago.cbslocal.com/2017/07/31/nearly-2000-chicago-area-mechanics-set-to-go-on-strike/ (July 31, 2017) (cited in Answer at p. 12, First Affirmative Defense ¶ 16 n.2).[2] Consumers heeded this advice, and McGrath was inundated with numerous and repeated phone calls inquiring whether McGrath was affected by the strike or open for business. Answer at 13, First Affirmative Defense ¶ 18. As a result of these constant inquiries, McGrath informed current McGrath customers (such as Plaintiff) via text message to the number they provided to McGrath that McGrath was not affected by the local mechanics strike and was open for business. *See* Answer at 13, First Affirmative Defense ¶¶ 19-20.

## ARGUMENT

**I. The Court Should Enter Judgment On The Pleadings In Favor Of McGrath Pursuant To Rule 12(c) Of The Federal Rules Of Civil Procedure.**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P 12(c). "A motion for judgment on the pleadings . . . is subject to the same

---

[1] *See also* Marni Pyke, Daily Herald, *Mechanics Strike Drags On But Some Cutting Solo Deals With Union*, http://www.dailyherald.com/news/20170904/mechanics-strike-drags-on-but-some-cutting-solo-deals-with-union (Sept. 4, 2017) (cited in Answer at p. 12, First Affirmative Defense ¶ 16 n.2) ("As the walkout drags on, consumers who need routine oil changes or major repairs face uncertainties, with some dealerships hiring outside workers and others turning customers away.").

[2] *See also* Mitchell Armentrout, Chicago Sun Times, *Union Mechanics Enter Second Week of Strike*, https://chicago.suntimes.com/news/union-mechanics-enter-second-week-of-strike/ (Aug. 7, 2017) (cited in Answer at p. 12, First Affirmative Defense ¶ 16 n.2) ("Car owners are advised to call their dealership ahead of time to arrange repairs."); CBS Chicago, *1,700 Chicago Area Auto Mechanics On Strike Amid Contract Dispute*, http://chicago.cbslocal.com/2017/08/01/auto-mechanics-strike/ (Aug. 1, 2017) (cited in Answer at p. 12, First Affirmative Defense ¶ 16 n.2) ("If your car is in need of repairs, you should call your service shop to make sure it is open during the strike").

standard as a Rule 12(b)(6) motion to dismiss." *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). Thus, to survive a 12(c) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ananthapadmanabhan v. BSI Fin. Servs.*, No. 15 C 5412, 2015 U.S. Dist. LEXIS 167649, at *3 (N.D. Ill. Dec. 15, 2015) (Leinenweber, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing whether a complaint has done so, while "a court must accept the plaintiff's allegations as true, and view them in the light most favorable to the plaintiff," a court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Ananthapadmanabhan*, 2015 U.S. Dist. LEXIS 167649, at *3-4 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Rigorous enforcement of these standards is essential, lest a plaintiff "with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (alteration and internal quotations omitted).

"The pleadings include the complaint, the answer, and any written instruments attached as exhibits," such as affidavits or declarations. *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). That includes "the documents attached as exhibits to [the defendant's] answer . . . ." *Pratt v. Everalbum, Inc.*, No. 17cv1600, 2017 U.S. Dist. LEXIS 152763, at *2 n.2 (N.D. Ill. Sep. 20, 2017) (granting 12(c) motion that plaintiff "expressly consented to the use of his name sent through the Ever app" based on defendant's answer and exhibits attached thereto); *see also Northern Ind. Gun*, 163 F.3d at 453 n. 4 (noting that the district court was entitled to consider on a 12(c) motion the "complaint with its four attachments and [defendant's] answer and attachment").[3] Consistent with Rule 12(b)(6), however, when

---

[3] In *Northern Indiana Gun*, the plaintiff filed a 1983 suit against a municipal convention center based on the convention center's imposition of restrictions regarding the presence of weapons or ammunition at the

considering a defendant's answer or documents attached thereto, the court must construe such items "in the light most favorable to the [plaintiff]." *Pratt*, 2017 U.S. Dist. LEXIS 152763, at *2 n.2.

### A. The Text Plaintiff Received Was Sent With His Prior Express Consent.

"To state a cause of action under the TCPA, a plaintiff must allege . . . that "the caller did not have the prior express consent of the recipient." *Ananthapadmanabhan v. BSI Fin. Servs.*, No. 15 C 5412, 2015 U.S. Dist. LEXIS 167649, at *9 (N.D. Ill. Dec. 15, 2015). In his complaint, however, plaintiff merely asserts in conclusory fashion that the text was "unsolicited" and sent without "prior express written consent." *See* Cmplt. ¶¶ 7, 14, 17, 26, 27, 30. But that is nothing more than a legal conclusion without any supporting factual details, "which is not entitled to an assumption of truth." *Ananthapadmanabhan*, 2015 U.S. Dist. LEXIS 167649, at *11. Defendant's Answer makes clear why Plaintiff pleaded only a legal conclusion—the text was plainly sent with his prior express consent because he provided his cell phone number to McGrath. *See* Answer at pp. 10-11, First Affirmative Defense ¶¶ 1-8.

The Seventh Circuit's decision in *Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) is directly on point. In that case, the Plaintiff claimed that she had received texts without her

---

convention center. 163 F.3d at 452. Two of the documents the plaintiff attached to its complaint were letters from the defendant to the plaintiff. *Id.* at 453-54. In support of its motion for judgment on the pleadings filed that same day, the defendant attached to its answer a letter from the plaintiff to the defendant that contextualized the exchange. *See id.*454. While the Seventh Circuit reversed entry of judgment on the pleadings for the defendant, it held that the district court was empowered to consider the defendant's exhibit. *Id.* at 453 n.5. Moreover, the Seventh Circuit's reversal was based on its view that because the case involved "freedom of expression"—a type of case in which it was "even more hesitant than usual to decide the claims presented without providing the parties an opportunity to develop the record"—the district court had improperly accepted at face value the "self-serving" factual statements in the letters that contradicted the plaintiff's allegations. *Id.* at 456. Like in, *Northern Indiana Gun*, McGrath's answer and the documents referenced in and attached to the answer contextualize the exchange between the parties, but unlike in *Northern Indiana Gun*, those statements of fact do not contradict the Plaintiff's allegations. Consequently, this Court can consider those items as part of McGrath's 12(c) motion.

consent, but the plaintiff in fact "gave her cell phone number to [the defendant] on several different occasions." *Id.* at 803. In finding that doing so constituted "prior express consent" to receive texts from the defendant, the Seventh Circuit invoked the explanation from the Federal Communications Commission (the "Commission" or "FCC") that "'persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary,'" and adopted the Ninth Circuit's reasoning that "'an effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages.'" *Id.* (quoting *In re Rules & Regs. Implementing the TCPA*, 7 FCC Rcd 8752, 8769 ¶ 31 (Oct. 16, 1992); *id.* at 804 (quoting *Van Patten v. Vertical Fitness Grp.*, LLC 847 F.3d 1037, 1044-45 (9th Cir. 2017). The result should be the same here: Plaintiff asserts in conclusory fashion that he received a text from McGrath about its service department without his consent, but he in fact provided his cell phone number to McGrath's service department on several different occasions. *See* Answer at pp. 10-11, First Affirmative Defense ¶¶ 1-8.

### B. Plaintiff Fails To Allege Facts Showing That The Text He Received Required Prior Express Written Consent, And Defendant's Answer Shows That He Cannot Do So.

As noted above, by providing his cell phone number to McGrath, Plaintiff provided his prior express consent to receive texts at that number from McGrath. In an effort to plead around that fact and salvage his claim, Plaintiff suggests that the text he received was nevertheless unlawful because he did not provide "prior express ***written*** consent" (Cmplt. ¶¶ 7, 14, 17, 30 (emphasis added)); *see* 47 C.F.R. 64.1200(f)(8) (defining the term "prior express written consent" to require a specific process for providing specific disclosures). Plaintiff is wrong.

First, Plaintiff's theory in the Complaint is that the text he received is a "telephone solicitation," and that a telephone solicitation "cannot be made to a recipient without the

recipient's "prior express written consent." Cmplt. ¶¶ 20-21. In support of this theory, Plaintiff quotes in part the TCPA's definition of a telephone solicitation: "a call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." Cmplt. ¶ 20 (quoting 47 U.S.C. § 227(a)(4)). But the Complaint omits the next clause of that definition, which explains that a "telephone solicitation" "does ***not*** include a call or message (A) to any person with that person's prior express invitation or permission [or] (B) to any person with whom the caller has an established business relationship . . . ." 47 U.S.C. § 227(a)(4) (emphasis added). As explained above, Plaintiff ***did*** provide his prior express invitation for the text he received and ***did*** have an established business relationship with McGrath. Thus, even assuming that the text message constitutes a "telephone solicitation" (which, as explained below, it does not), the exceptions in 47 U.S.C. § 227(a)(4) apply, and no express written consent was necessary.

Second, in any event, Plaintiff's assertions are wholly conclusory and not entitled to an assumption of truth. The regulations implementing the TCPA require that a sender obtain "prior express written consent" before sending certain texts that include an "advertisement" or "telemarketing." 47 C.F.R. § 64.1200(a)(2). An "advertisement" is defined as "material advertising the commercial availability or quality of any property, goods, or services" (47 C.F.R. § 64.1200(f)(1)) and "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). In support of his theory that McGrath's texts required "prior express written consent," Plaintiff's simply parrots these definitions, asserting that the text he received was "part of an advertising campaign" (*i.e.*, an "advertisement"), and that it was "for the purposes of selling automotive maintenance

products," (*i.e.*, "for the purpose of encouraging the purchase of . . . goods"). Cmplt. ¶¶ 7 & 17. In other words, Plaintiff "merely states what he understands the TCPA to proscribe, and then goes on to plead threadbare and conclusory facts that allege the elements of a *prima facie* cause of action under the [TCPA]." *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013). But as this Court explained in *Ananthapadmanabhan*, "when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details." 2015 U.S. Dist. LEXIS 167649, at *10; *see also Martin v. Direct Wines, Inc.*, No. 15cv757, 2015 U.S. Dist. LEXIS 89015, at *4 (N.D. Ill. July 9, 2015) (dismissing TCPA claim because "[i]t is insufficient for [a] plaintiff to simply parrot the language of the TCPA and conclusorily allege [one of the elements of a claim]"); *Johansen v. Vivant, Inc.*, No. 12cv7159, 2012 U.S. Dist. LEXIS 178558, at *9 (N.D. Ill. Dec. 18, 2012) (same).

Third, Plaintiff's conclusory allegations are contradicted by the plain language of the text he received. It is axiomatic that "[a] court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document" and that "[w]here an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) (affirming dismissal of plaintiff's claims because a review of the exhibits attached to the complaint did not support her allegations). Here, the text plaintiff received was, on its face, informational.

Congress directed the Commission to "implement" the TCPA (47 U.S.C. § 227(b)(2)), and that has included defining and explaining the meaning of "advertisement" and "telemarketing." The Commission has explained that "messages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA," and that

"communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules." *Report & Order & Third Order on Reconsideration, In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd 3787, *3810 ¶ 43, *3814 ¶ 53 (Apr. 6, 2006). The Commission has also explained that "messages whose purpose is to facilitate, complete, or confirm" a transaction are "not advertisements" and neither are messages that "notify the recipient of a change in terms or features regarding . . . [an] ongoing relationship." *Id.* at *3812-13 ¶ 49. The Commission has further explained that "a company logo or business slogan" or "a reference to a commercial entity does not by itself make a message a commercial message," and one should instead look to the "primary purpose of the communication." *Id.* at *3814 ¶ 51. And the Commission's Consumer and Governmental Affairs Bureau has explained that "price" is a "key element" of an "advertisement," and its appearance is "strongly probative" of whether a communication is an advertisement. *Order, Pet. of Kohll's Pharmacy & Homecare, Inc. for Declaratory Ruling & Waiver* ("*Kohll's*"), 31 FCC Rcd 13289, at *13292 ¶ 6 (Dec. 21, 2016).

The Commission's guidance regarding the TCPA is binding on district courts pursuant to "the Administrative Orders Review Act, better known as the Hobbs Act," which "reserves to the [federal] courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders . . . ." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 n.3, 448 (7th Cir. 2010) (quoting 28 U.S.C. § 2342(1)) (explaining that the Hobbs Act prevents lower courts from "considering the validity of final FCC orders," and its "jurisdictional limitations are 'equally applicable whether a party wants to challenge the rule directly or indirectly, by suing someone who can be expected to set up the rule as a defense in

the suit.'") (citations omitted); *see also Michel v. Credit Prot. Ass'n L.P.*, No. 14-cv-8452, 2017 U.S. Dist. LEXIS 134767 (N.D. Ill. Aug. 23, 2017) (granting summary judgment to defendant based on FCC's guidance regarding scope and meaning of TCPA, which district court deemed "final and controlling" pursuant to *CE Design* and the Hobbs Act).[4]  Applying that guidance here shows that the text Plaintiff received is neither an advertisement nor telemarketing.

Nothing on the face of the text "promotes" a "commercial product or service." Rather, the language on the text makes clear that its "primary purpose" is to provide industry news—the existence of a strike and its impact on McGrath. While the name "McGrath Lexus" appears in the text, that alone is insufficient to convert the text into an advertisement or telemarketing. And critically, no price associated with any goods or services (let alone the mention of any goods or services) appears anywhere in the text. Federal courts have routinely dismissed TCPA complaints under similar circumstances.

The decision of the court in *P&S Printing LLC v. Tubelite, Inc.*, No. 14cv1441, 2015 U.S. Dist. LEXIS 93060 (D. Conn. July 17, 2015) is instructive. In that case, the plaintiff received a fax that informed the recipient that it would be closed on Labor Day, provided a revised delivery schedule for the holiday, indicated that "Tubelite continues its commitment to provide you with the best service possible," thanked the recipient for their "continued support and help in allowing [Tubelite] to provide [them] with this exceptional service," and identified Tubelite as "dependable" and "leaders in eco-efficient storefront curtainwall and entrance systems." *Id.* at *2. Plaintiff alleged that the fax violated the TCPA because it was unsolicited and was sent for the purpose of "advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. 64.1200(f)(1). The court, however, disagreed: Relying on the

---

[4] Other circuits have held similarly. *See Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302, 1308 (11th Cir. 2015); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 637 (6th Cir. 2015).

Commission's guidance outlined above, the court noted that "this fax's primary purpose, on its face, was to communicate information to current customers about a change in delivery schedule due to the Labor Day holiday;" stated that "[i]t is difficult to construe the message otherwise;" and held that the communication was not "an 'advertisement' as a matter of law, because it d[id] not tend to proposed a commercial transaction and d[id] not appear on its face to have been sent based on a commercial pretext." *Tubelite*, 2015 U.S. Dist. LEXIS 93060, at *11-12.

Also instructive is the decision of the court in *Dolemba v. Illinois Farmers Insurance Co.*, No. 15cv463, 2015 U.S. Dist. LEXIS 104314 (N.D. Ill. Aug. 10, 2015). In that case, the plaintiff received a prerecorded call that informed the plaintiff that he could attend a meeting that would explain how to become a Farmers agent and sell services "including insurance, annuities, mutual funds, shopping services, and investment products." *Farmers*, 2015 U.S. Dist. LEXIS 104314, at *2. The court looked to the guidance from the Commission, and held that the message was neither an advertisement nor telemarketing, but rather informational, and dismissed the complaint. *Id.* at *4-14; *see also Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1054 (N.D. Ill. 2016) (holding a text message was neither an advertisement nor telemarketing where it provided the sender's name and contact information, explained that the sender was a realtor, stated in general terms the compensation structure, explained that the realtor was named a top place to work, and directed the recipient to the sender's website). In so holding, the court distinguished cases where the communication at issue "tout[ed] the benefits of joining the [defendant's] program," "trumpeted" the "variety" and "quality" of the defendants' products, "specifically listed" examples of the defendants' products, or listed "the attractive features" of the defendants' products. *Id.* at *6-8; *See also Kohll's* at *13292 ¶ 7 (finding that the fax at issue was an advertisement because it included "the product and the price, key elements indicating

'commercial availability'" and included "incentivizing lines of text" extolling the virtues of the defendant's product).

The reasoning of the courts in *Tubelite* and *Farmers* applies with equal force here, and the outcome should be the same, too. As in *Tubelite*, the message's primary purpose, on its face, was to communicate information to current customers about hours of operation, and there are no factual allegations in the Complaint to suggest otherwise. And as in *Farmers*, the text did not specifically identify any of McGrath's products or the prices of those products, or include any incentivizing language touting the quality of those products.

Fourth, Defendant's Answer further undermines Plaintiff's conclusory assertions and shows why he did not and could not plead any facts in support of his assertion that the text was anything but informational. Specifically, just preceding the text Plaintiff received, media outlets were advising customers to call ahead to see if their dealership was affected by a widespread mechanics strike before taking their vehicle in for service. *See supra* at p.4. Consumers heeded this advice and inundated McGrath with such calls, leading McGrath to inform its current customers that it was not affected by the local mechanics strike and was open for business. *See* Answer at 13, First Affirmative Defense ¶¶ 18-20.

### C. Plaintiff Fails To State Any Claim For A Violation Of 47 C.F.R. § 64.1200((b)(2).

Plaintiff asserts that text he received was unlawful, in part, because it "fails to state clearly the telephone number of the sender as required by 47 C.F.R. § 64.1200(b)(2)." Cmplt. ¶ 9. But that section applies on its face only to "artificial or prerecorded voice telephone messages." 47 C.F.R. § 64.1200(b)(2). In any event, there is no private right of action for violations of this section: 47 C.F.R. § 64.1200(b)(2) implements 47 U.S.C. § 227(d), and "there is no private right of action for violations of 47 U.S.C. § 227(d) . . . ." *Cynthia S. Holmes, P.C.*

*v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 854-55 (S.D. Ill. 2010) (citing cases).

## CONCLUSION

For the reasons set forth above, McGrath respectfully requests that the Court enter judgment on the pleadings in favor of McGrath.

Dated: December 11, 2017

                                                   Respectfully Submitted,

                                                 By: /s/ Eric L. Samore
                                                 Attorney for Defendant

Eric L. Samore ARDC # 6181345
John C. Ochoa ARDC # 6302680
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
esamore@salawus.com
jochoa@salawus.com

# CERTIFICATE OF SERVICE

The undersigned certifies that on December 11, 2017, he served the **Defendant McGrath Colosimo, Ltd. d/b/a McGrath Lexus's Motion For Judgment On The Pleadings** on all attorneys of record. This pleading was served upon the attorneys as listed above, pursuant to the Northern District of Illinois General Order on Electronic Case Filing.

[x]  Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on: December 11, 2017.

/s/ Eric L. Samore

Eric L. Samore ARDC # 6181345
John C. Ochoa ARDC # 6302680
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200
esamore@salawus.com
jochoa@salawus.com